[Civ. No. 779.   Third Appellate District.—February 4, 1911.]

In the Matter of the Estate of SIMON H. SEYMOUR, Deceased.   CHARLES E. PARENT, Executor of Will of SUSAN C. SEYMOUR, Deceased, and SARAH HARRINGTON and ROBERT McBRYANT, Appellants, v. R. H. LLOYD and E. W. HAWKINS, Executors of Will of SIMON H. SEYMOUR, Respondents.

ESTATES OF DECEASED PERSONS—ORDER FIXING PLACE OF INTERMENT OF DECEDENT—ORDER REFUSING TO VACATE NOT APPEALABLE—DISMISSAL.—Where an order of the superior court fixed a place for the interment of the body of the decedent which had been deposited in a vault, and providing for a monument over the grave, an order refusing to vacate that order is not appealable, and an appeal therefrom must be dismissed.

ID.—NONAPPEALABLE ORDER.—There is no authority for an appeal in any probate matter not found in subdivision 3 of section 963 of the Code of Civil Procedure, and an attempted appeal from an order not therein found is abortive, and must be dismissed.

ID.—ORDER DIRECTING PLACE OF INTERMENT NOT APPEALABLE.—Even the original order directing the place of interment and providing for the expense of a monument is not appealable under the statute, any more than the order refusing to vacate it.

ID.—EXCESS OF JURISDICTION NOT AFFECTING RIGHT OF APPEAL.—The fact, if it be true, that the court exceeded its jurisdiction in making the original order cannot have the effect to make a nonappealable order appealable.

ID.—REMEDY FOR EXCESS OF JURISDICTION.—The remedy of the parties dissatisfied with the jurisdiction of the court to make the original

order would lie on a direct attack upon the court's action on that ground.

ID.—JURISDICTION OF PROBATE COURT NOT EXCEEDED.—It was the duty of the executors, under the circumstances appearing, to initiate and prosecute appropriate proceedings providing for final and permanent disposition of the remains of their testator, and equally the duty of the court upon a proper showing, which we must presume to have been made, to make an order authorizing the executors to execute that duty. The wish of the deceased and his widow cannot affect or interrupt the court's power or jurisdiction to make the order.

MOTION to dismiss an appeal from an order refusing to vacate an order of the Superior Court of the City and County of San Francisco directing the interment of a deceased person. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Charles F. Hanlon, for Appellants.

Charles W. Slack, for Respondents.

HART, J.—Simon H. Seymour, deceased, and Susan C. Seymour, deceased, were, during their lives, husband and wife, having intermarried in the year 1877. In June 1904, Simon, while spending the summer with his wife at Bartlett Springs, this state, died, leaving no children. Susan was, in the same month, appointed special administratrix of Simon's estate by the superior court of the city and county of San Francisco, and discharged the duties of that office until the purposes of the special administration were fully accomplished and the last will of the deceased was admitted to probate. The last-mentioned proceeding was had in the month of April, 1905, and letters testamentary granted and issued to Reuben H. Lloyd and E. W. Hawkins.

The other facts relating and leading to the order from which this appeal is taken are accurately narrated in his brief by counsel for the executors of Simon's estate, and we will, therefore, adopt the same here as the statement of said facts:

"The Seymour family having no suitable burial ground, the body of Simon was temporarily deposited in the public vault of the Cypress Lawn Cemetery, in San Mateo county. In

April, 1906, the widow, desiring to place the corpse in a permanent grave, and having selected the cemetery agreeable to her, petitioned the court to direct the executors so to inter. On the day set for the hearing of the petition, San Francisco was in flames, thus preventing the hearing of the petition. Nothing was thereafter done about the matter until August 9, 1907, when, in pursuance of a petition of Simon's executors, an order was made authorizing the executors to 'purchase a burial plot in the Masonic Cemetery in which to inter the body of Simon H. Seymour, deceased, and to erect an appropriate monument upon the grave of said decedent, at a cost not to exceed the sum of $5,000.'

"Previously, and on July 16, 1906, Susan died. On October 23, 1907, a notice of motion to vacate the order of August 9th, together with a supporting affidavit, was served and filed by the executor of the will of Susan. On June 4, 1908, the petition of Sarah Harrington and Robert McBryant, sister and brother and next of kin of Susan, was filed, praying the court to set aside the order of August 9th, in relation to the burial of Simon. The petition was supported by an affidavit setting forth that Simon and Susan had in their lifetime desired to be buried together with George Kordmeier and John McBryant, respectively the brother of Simon and the father of Susan. The two motions were heard from June 14, 1908, to June 16, 1908. On June 19, 1908, the motions were denied on the ground that the moving parties had no interest in the controversy."

The controversy is brought here by an appeal from the order denying the motion of the executor of Susan's estate and that of Harrington and McBryant to set aside and vacate the order authorizing the executors of Simon's estate to "purchase a burial plot in the Masonic Cemetery in which to inter the body of Simon H. Seymour, deceased, and to erect an appropriate monument upon the grave of said decedent, at a cost not to exceed the sum of $5,000."

The point is made by the respondents that the order appealed from is a nonappealable order, and a motion to dismiss the appeal on that ground is under submission.

The point is well taken and the motion must be granted.

The cases are uniform upon the proposition that authority for an appeal in any probate matter must be found in sub-

division 3 of section 963 of the Code of Civil Procedure, for said subdivision of said section specifically points out all and the only cases or instances in which an appeal may be taken in probate proceedings. There is no other provision of law in this state which purports to authorize an appeal in any case in probate matters. Subdivision 2 of said section 963, establishing the right of appeal from orders after final judgment, has often been held not to apply to probate proceedings. Therefore, any order in probate proceedings that does not come within any of the cases enumerated in subdivision 3 of said section 963 is not appealable, and an attempted appeal from such an order is abortive, and will, of course, be dismissed. (See *Estate of Calahan,* 60 Cal. 232; *Estate of Lutz,* 67 Cal. 457, [8 Pac. 39]; *Estate of Wiard,* 83 Cal. 619, [24 Pac. 45]; *Estate of Hathaway,* 111 Cal. 270, [43 Pac. 754]; *Estate of Wittmeier,* 118 Cal. 255, [50 Pac. 393]; *Estate of Hickey,* 121 Cal. 378, [53 Pac. 818]; *Estate of Winslow,* 128 Cal. 311, [60 Pac. 931]; *Estate of Cahill,* 142 Cal. 628, [76 Pac. 383]; *Estate of Edelman,* 148 Cal. 233, [113 Am. St. Rep. 231, 82 Pac. 962]; *Estate of Feltwell,* 152 Cal. 573, [93 Pac. 283]; *Estate of Bouyssou,* 1 Cal. App. 657, [82 Pac. 1066].)

Appeals in probate proceedings are limited by subdivision 3 of section 963 of said code to the following judgments or orders: ''From a judgment or order granting or refusing to grant, revoking or refusing to revoke, letters testamentary, or of administration, or of guardianship; or admitting or refusing to admit a will to probate, or against or in favor of the validity of a will, or revoking or refusing to revoke the probate thereof; or against or in favor of setting apart property, or making an allowance for a widow or child; or against or in favor of directing the partition, sale, or conveyance of real property, or settling an account of an executor, administrator, or guardian; or refusing, allowing, or directing the distribution or partition of an estate, or any part thereof, or the payment of a debt, claim, or legacy, or distributive share; or confirming or refusing to confirm a report of an appraiser or appraisers setting apart a homestead.''

Manifestly, it will require no argument to demonstrate that the foregoing provisions authorizing appeals in probate cases do not include, even by analogy and much less by express

terms, an order of the character of the one from which it is
sought to prosecute the appeal in the case before us.

The objection to the order, to vacate which the proceedings
giving rise to the order appealed from were inaugurated, is
not directed against the amount of money thus authorized to
be expended for a burial place, but against the manner in
which the body of Simon H. Seymour was thus proposed to be
disposed of.  In truth, the real gravamen of the opposition of
the appellants to the order seems to be in its omission to pro-
vide for the interment of the remains of Susan and those of
her father and Simon's brother in the same plot or vault in
which the remains of Simon are to be interred.

But, as declared, it is very clear that there is to be found in
the language of subdivision 3 of section 963, *supra,* neither
authority for an appeal from an order directing the manner of
disposing of the body of the deceased or the particular place
in which it shall be interred, nor any warrant for an appeal
from an order refusing to vacate and set aside an order pro-
viding for the permanent repose of the body of a deceased
person and setting apart out of the estate of the deceased a
sum of money to be expended for that purpose.

But it is declared by counsel for appellants that the order
establishing the place of burial and fixing and allowing the
sum to be expended therefor "is in excess. of the jurisdiction
of the lower court, and null and void, whether there be an
appeal or not, so the question of what constitutes an appeal-
able order is immaterial."  This position is untenable.  It
proceeds upon the theory that Simon having in his lifetime
expressed the wish (not in his last will) that his remains be
interred along with the remains of his wife, on her death, and
those of his brother and father in law, in what is known as the
"Woodlawn Cemetery," and Susan having (not by will) ex-
pressed a similar wish and so expressed herself to the executors
of Simon's estate, who agreed to comply with said wish, the
order of the court with respect to said matter being, as is
the charge, in conflict with the wish so expressed and the
agreement so had with said executors, is in excess of the juris-
diction of the court.  In other words, the contention is that
it was the duty of the court to make an order in the premises
in conformity with the wish of Simon and Susan in that re-

gard, and that it was without authority or jurisdiction to make any other order with reference thereto.

A complete reply to this proposition is that, if the court was without jurisdiction to make an order from which the law has provided for no appeal, the remedy of the parties dissatisfied with such order, assuming that there were such parties having the legal right to complain thereof, would lie in a direct attack upon the court's action in thus usurping jurisdiction or exercising unauthorized power. We do not understand it to be the rule that, where a court makes an order from which no appeal is authorized by the statute, such order, nevertheless, becomes appealable if it appears that, in making it, the court exceeded its jurisdiction or that the court's jurisdiction to make it may be inquired into on an appeal therefrom.

While, under our view of the case, it is unnecessary to pass upon the question whether the court did or did not exceed its jurisdiction in making the order objected to, we do not hesitate to say that the case of *O'Donnell* v. *Slack*, 123 Cal. 285, [55 Pac. 906, 43 L. R. A. 388], cited by appellants, could not, even if the question of jurisdiction of the court were properly submitted here, furnish a great amount of comfort to appellants. In that case, which was before the court on a writ of *certiorari*, the power or jurisdiction of the court to order the remains of the deceased to be delivered to the custody of a stranger as against the right of the widow of the deceased to the possession and disposition of his remains was directly in question. The court in probate had, against opposition interposed by the widow as the next of kin to the deceased, made an order directing the delivery of the possession of the remains of her deceased husband to one Martin, a stranger to his blood, to be by said Martin removed to Ireland for burial. The supreme court held that the court below "exceeded its jurisdiction in attempting to award the custody of the body of the deceased to one not of kin, to the exclusion of the next of kin."

No such proposition could arise in any proceeding on the facts presented here. As before stated, the attack upon the order to which objection is made is not that the court below had thus attempted to award custody of the remains of the deceased to someone other than the next of kin, but that the manner of disposing of the body and the place of burial pro-

vided for by said order were not in accord with the wish of Simon himself and his deceased wife.

It appears from the evidence or affidavits supporting the motion to vacate the order complained of that the body of Simon, from the time of his death up to the time at least of the making of said order, had reposed in a public vault in one of the cemeteries of San Mateo county, for which vault-age fees were required to be paid, and that it was the intention that it should remain there until provision was made for a place for its permanent repose. It further appears that Simon, during his lifetime, had purchased a plot on which he had erected a mausoleum in the Masonic Cemetery, situated in the city of San Francisco, in which were interred the remains of his brother and father in law and where it was intended his own and his wife's remains should be interred. It seems that, before Simon's death, the board of supervisors of the city and county of San Francisco "adopted ordinances prohibiting further interment of the remains of deceased persons in said San Francisco cemetery." Thereafter said Simon "made attempts to move the said mausoleum to some cemetery in San Mateo county," but he failed to accomplish that object. After Simon's death, his widow visited all the cemeteries, and finally decided to select Woodlawn Cemetery, in San Mateo county, in which she desired that the remains of her husband, of herself, and those of his brother and her father should be interred. It is also shown that at the time of the making of said order there was, in fact, living, no next of kin to Simon. His widow's share in his estate had been distributed to her before death, and the objectors to the order, other than the executor of her estate, were a brother and a sister of Susan, in no degree or sense next of kin to Simon. It seems to us that, under the facts as thus briefly detailed, there could be no possible question of the power of the court to make provision for the permanent repose of the remains of Simon in accordance with whatever reasonable or proper showing the executors of his estate might make. In fact, it was the absolute duty of the executors, under the circumstances, to initiate and prosecute appropriate proceedings for providing for the final and permanent disposition of the remains of their testator, and, of course, equally the duty of the court, upon a proper showing, which must be presumed to have been

made, to make an order authorizing the executors to execute that duty. Whether the course pursued by the executors and the court in the execution of that duty was strictly in harmony with the wish of the deceased and his widow, the latter deceased before the order was made, could not, manifestly, affect or interrupt the court's power or jurisdiction to make the order. For aught that can be said to the contrary, so far as this record shows, it might have been found by the court to be impracticable, for reasons good and sufficient, to make provision for the burial of Simon's remains agreeably to his and his wife's expressed wishes. But, at all events, as declared in the outset, there is no warrant in law for an appeal from an order such as the one from which this appeal is attempted to be prosecuted, and the motion to dismiss will, therefore, have to be granted.

So ordered.

Chipman, P. J., and Burnett, J., concurred.